UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re MPGF, Inc. d/b/a Maple Grove Floral
and Indulge & Bloom,

Chapter 11 Case No. 24- 42399

Debtor.

**PLAN OF REORGANIZATION OF MPGF, INC.**
**December 31, 2024**

WALSH LAW
RONALD J. WALSH, ESQ, Lic. No. 187847
13570 Grove Drive, Suite 172
Maple Grove, MMN 55402
952-746-7872
ron@walshlawmn.com

Attorney for Debtor

## TABLE OF CONTENTS

ARTICLE I:        INTRODUCTION/BACKGROUND SUMMARY

ARTICLE II:       CLASSIFICATION OF CLAIMS

                A. Class 1: Allowed Administrative Claims
                B. Class 2: Secured/Unsecured Claim
                   of HPJ, LLC (Landlord) (Impaired)
                C. Class 3: General Unsecured Claims (Impaired)
                D. Class 4: Equity Holders (Unimpaired)

ARTICLE III:      ALLOWANCE OR DISALLOWANCE OF CLAIMS

ARTICLE IV:       EXECUTORY CONTRACTS AND UNEXPIRED LEASES

ARTICLE V:        MEANS OF IMPEMENTATION

ARTICLE VI:       GENERAL PROVISIONS

ARTICLE VII:      DISCHARGE

Exhibit  A:       LIQUIDATION ANALYSIS

Exhibit  B:       CASH FLOW PROJECTIONS

## ARTICLE I: INTRODUCTION/BACKGROUND SUMMARY

### A. <u>Summary of Plan</u>

This Chapter 11 plan of reorganization (the "Plan") proposes to pay creditors of MPGF, Inc. (the "Debtor") from projected disposable income of the Debtor over a sixty (60) month period. The Plan has one secured class, one unsecured class and one class for equity interests. As required by the Bankruptcy Code, this Plan provides for full payment of allowed Administrative and Priority Claims.

Each creditor should thoroughly read this Plan for an explanation of the precise treatment of the applicable claims. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an Attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is Chapter 7 liquidation. The liquidation analysis, as of December 31, 2024, attached as Exhibit A, demonstrates that unsecured creditors will receive <u>nothing</u> under a Chapter 7 bankruptcy liquidation.

The Debtor's current cash flow projections are attached as Exhibit B.[1] These projections confirm that the Debtor generates sufficient cash flow to fund the payments due under the Plan and provide payments to unsecured creditors in the total amount of approximately $180,000.00 or less over the 60-month period following the Effective Date of this Plan. The Effective Date is defined herein as April 1, 2025, the first calendar quarter following the expected Order Confirming this Plan.

In summary, the Debtor intends to make a quarterly pro-rata distribution of at least $9,000.00 per calendar quarter toward all Classes of Creditors until all allowed claims are paid in full.

### B. <u>History of the Debtor.</u>

Debtor operates a floral shop in Maple Grove, MN. It purchased the assets of Falula's Maple Grove Floral, Inc. d/b/a Maple Grove Floral in 2018 and has continued to operate at the same retail location to date. The address of the retail store is located at 13708 83rd Way North, Maple Grove, MN 44369. Revenues are generated from the retail sale of floral arrangements, related gifts, cards, weddings/events and outdoor pots, etc. Debtor is a Member of Teleflora, an association of Florists, wherein the Debtor places

---

[1] Exhibit B is borrowed from Debtor's Motion to Approve Stipulation for Use of Cash Collateral. Debtor understands that a more detailed and comprehensive projection will be needed for creditors to evaluate. Because Debtor's future cash flow and viability are conditioned upon the resolution of the assumption or rejection of the non-residential lease of real estate with HPJ, LLC, Debtor will cannot yet accurately develop a long term projection of its cash flow.

online orders outside of the Twin Cities Metro and fills orders locally from other Florists outside the Twin Cities Metro.

The Debtor is currently leasing approximately 1,516 square feet of retail space from HPJ, LLC in a small strip mall on the North side of Weaver Lake Road in Maple Grove, MN. Debtor filed this Small Business Chapter V case on September 5, 2024 in response to an Eviction Proceeding commenced by its Landlord HPJ, LLC in Hennepin County District Court as Case No. 27-CV-24-10799. HPJ, LLC alleged non-payment of rent. Debtor disputed and continues to dispute the amount of rent owed. Debtor claims and continues to claim that Landlord delivered the leased premises in unusable condition due to mold in the walls and floor, faulty HVAC and plumbing. HPJ, LLC took some steps to mitigate the mold issues but stopped its work before the premises were brought to a safe condition. HPJ, LLC additionally withheld its contractual tenant improvement allowance of $28,000.00 from Debtor. Debtor will be objecting the claim of HPJ, LLC as filed in the amount of $84,253.51. HPJ, LLC is also a partially secured creditor of Debtor by virtue of its Security Agreement and filed Financing Statement of record.

Mr. Joshua Lindgren owns 100% of the authorized and issued shares of the Debtor. Mr. Lindgren works part time for the Debtor as its bookkeeper. Mr. Lindgren is employed full-time by Word of Peace Lutheran Church as Director of Worship and Music.

Mr. Raed Kakish is the President/General Manager/Senior Floral Designer of the Debtor and the spouse of Joshua Lindgren. Ms. Ranya Phelps is the sister of Mr. Raed Kakish and independently employed by the Debtor s an Assistant Manager. Debtor employs seven (7) other support employees and drivers for deliveries of floral arrangements. Debtor expects that no additional management or staff will need to be hired to execute the Plan.

Compensation to Mr. Lindgren is $20,307.60 per year.

Compensation to Mr. Kakish is $85,560.00 per year, plus reimbursement of authorized business expenses and a reasonable car allowance because Mr. Kakish will travel to client events, promote the Debtor and sometimes actually deliver floral arrangements.

Compensation to Ms. Phelps is $60,708.00 as an independent contractor.

It is expected that all management compensation will not be increased over the life of the Plan other than reasonable raises for cost of living, etc.

Debtor submits that, but for the Covid epidemic in 2020 and the disputed issues with the Landlord, the business has been viable and generally paying its current expenses of operating. Old unsecured debt for was being paid as best as Debtor could afford. Debtor is shedding the expense of a warehouse for event props owned by Ms. Ranya Phelps.

Debtor has also ceased payments for unsecured claims not owed by Debtor but as an accommodation to Mr. Kakish and Ms. Phelps.

## ARTICLE II: CLASSIFICATION OF CLAIMS

Class 1: Allowed Administrative Claims
Class 2: Allowed Secured/Unsecured Claim of HPJ, LLC (Impaired)
Class 3: Allowed General Unsecured Claims (Impaired)
Class 4: Equity Holders (Unimpaired)

### Class 1.  Subchapter V Trustee and Counsel for Debtor

Allowed Administrative Claims shall be paid in full and before any distribution to any other allowed claims.  These claims are estimated at $15,000.00.  As of the date of this Plan of Reorganization, Debtor expects that Class 1 claimants will include the Small Business Chapter V Trustee and the Attorney for the Debtor.

Debtor is current in all post-petition wage withholding taxes.  Debtor further understands that it does not have any unpaid pre-petition tax obligations.  There is an estimated claim by the Internal Revenue Service filed in this case that arises from the Debtor's pre-petition failure to file its annual income tax returns.  Debtor has filed its required income tax returns and is in contact with the Internal Revenue Service to amend or otherwise withdraw the filed claim of the Internal Revenue Service.

Debtor is current in its pre-petition and post-petition payroll.

Each Holder of an Allowed Class 1 claim shall receive its pro rata share of an estimated gross quarterly disbursement of $9,000.00.  The effective date of this Plan shall be April 1, 2025.  Beginning on April 1, 2025 and continuing thereafter until the earlier of payment in full or September 30, 2025 at which time any remaining unpaid Allowed Class 1 claims shall be paid in full.

### Class 2.  Secured/Unsecured Claim of HPJ, LLC for Pre-Petition Rent

Landlord HPJ, LLC has filed a secured claim for pre-petition rent in the amount of $84,253.51.

This secured claim is made by Debtor's Landlord HPJ, LLC for pre-petition rent pursuant to its lease of non-residential real estate with the Debtor.  As of the date of this Plan, the full amount claimed by HPJ, LLC for pre-petition rent is disputed.  Debtor will object to the claim but acknowledges that some portion of this claim for pre-petition rent will be secured.  As of the date of this Plan, Debtor intends to timely file a motion to request additional time to decide whether to assume or reject its lease of non-residential real estate with HPJ, LLC.  Debtor has not yet determined whether to assume or reject its current lease of non-residential real estate with HPJ, LLC.

In the event that Debtor decides to assume the lease of non-residential real estate with HPJ, LLC, the allowed secured and unsecured portions of the HPJ, LLC claim will be paid in full, the exact treatment of this bifurcated claim for pre-petition rent is contingent on the resolution of the Debtor's Objection to the claim of HPJ, LLC and the assumption that the Court will allow the Debtor additional time to make its decision to assume or reject its lease of non-residential real estate. Because the unsecured portion of this claim is for a pre-petition non-residential lease arrearage, this portion shall be paid in full prior to any distribution to Class 3 General Unsecured Trade Claims. Debtor shall commence to pay this bifurcated claim upon the earlier date of payment in full of Class 1 Allowed Claims or October 1, 2025 from a quarterly distribution of $9,000.00.

If the lease is rejected, then the allowed unsecured claim of HPJ, LLC will be treated as a Class 3 General Unsecured Claim.

Raed Kakish is a personal guarantor of the Debtor's obligations to HPJ, LLC. Debtor understands that HPJ, LLC has recently obtained a default judgement against Mr. Kakish individually for an amount in excess of $500,000.00 that further secures payment to HPJ, LLC.

Class 2 is Impaired and entitled to vote on the Plan.

### Class 3. Allowed General Unsecured Trade Claims other than Pre-Petition Rent

"General Unsecured Claims" are not secured by property of the estate and not entitled to priority under §507 of the Bankruptcy Code. As of the date hereof, (and before objections) Debtor estimates the total pool of allowed general unsecured claims to be about $88,077.37 and consisting of the following creditors:

Filed Claims
| | |
|---|---|
| American Express National Bank | $47,263.10 |
| Valyria, LLC d/b/a Transpac | $23,611.00 |
| US Bank NA, d/b/a Elan Financial Services | $1,711.86 |
| Total | $74,297.82 |

Unfiled Claims
| | |
|---|---|
| Total Refrigeration | $8,061.45 |
| Koehler & Dram | $2,395.06 |
| Preferred Electric | $3,323.04 |
| Walsh Law | TBD |
| Total | $13,779.55 |

In full satisfaction of such claims, each Holder of a Class 3 claim shall receive its pro rata share of an estimated gross quarterly disbursement of $9,000.00. The gross

quarterly disbursement shall continue until all Class 3 _allowed_ claims are paid in full.  As of the date of this plan, the percentage committed to payment of _allowed_ Class 3 claims is 100%.  Payment of these claims shall commence in the first calendar quarter following payment in full of the allowed Class 2 claim of HPJ, LLC and continue until all allowed Class 3 claims are paid in full.

Class 3 Claims are impaired and entitled to vote on the Plan.

**Class 4.  Equity Interests.**

Equity Interest Holders are persons who hold an ownership interest in the Debtor. The only Member of Class 4 is Joshua Lindgren (100%).  Mr. Lindgren shall retain his equity interest in the Debtor.

Class 4 Claims are not impaired and deemed to accept the plan,

## ARTICLE III: ALLOWANCE OR DISALLOWANCE OF CLAIMS

**3.1 Disputed Claims.**
A "Disputed Claim" shall mean a claim that has not been allowed or disallowed by a final non-appealable order, and to which either: (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent of unliquidated.

**3.2  Payments and Distributions with Respect to Disputed Claims.**
No payments or distributions will be made with respect of a disputed claim until such claim has been allowed by a final, non-appealable order.  If there is a disputed claim, the value of any disputed claimant's distribution will be withheld until the dispute is resolved.  If the claim is resolved in whole or in part in favor of the claimant, the applicable portion of the funds will be paid to the claimant. The remaining funds will be paid to other Class 3 creditors along with their respective next scheduled payment.

**3.3  Settlement of Disputed Claims.**
The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE IV: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**4.1  Assumed Executory Contracts and Unexpired Leases.**

a.  The Debtor will request additional time from the Court to assume or reject its current non-residential lease of the non-residential lease with HPJ, LLC. The rent on the space is current post petition.  There is a significant dispute over

and objection to the Landlord's claim to pre-petition unpaid rent. Debtor remains open to the possibility of a negotiated resolution of the amount of the allowed arrears, the cure period for those arrears or a mutual termination of the leasehold. Debtor will be objecting the filed claim of HPJ, LLC. Upon resolution of that claim, the allowed amount for pre-petition arrears shall be paid in a reasonable time from the proposed quarterly distributions set forth above. The exact amount to be determined after the resolution of the claim objection and any necessary amendment to this Plan.

b. The Debtor has executory contracts with Teleflora and its POS vendor Dove, Inc. These executory contracts are paid current to date and will be deemed assumed; and

c. Debtor is not aware of any other executory contracts or unexpired leases.

4.2 **Rejection of Executory Contracts and Unexpired Leases.**

Each and any executory contract or unexpired lease that (i) has not been expressly assumed or rejected with approval by order of the Bankruptcy Court on or prior to the Confirmation Date will, as of the Confirmation Date, and subject to this section, be deemed to have been rejected by the Debtor. A Proof of Claim for any claim arising from the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court no later than 30 days after entry of the order confirming this Plan.

### ARTICLE V: MEANS OF IMPLMENTATION

5.1. **Vesting and Future Income.**
On the Effective Date, all the Debtor's respective rights, title and interest in and to all assets shall vest in the reorganized Debtor, and in accordance with §1141 of the Bankruptcy Code.

5.2 **Future Management.**
The Debtor will operate prospectively with increased and expanded oversight by Mr. Joshua Lindgren. Mr. Kakish and Ms. Phelps will continue in their current positions for the foreseeable future, albeit with more accountability to Mr. Lindgren's increased affirmative oversight and participation. Post Confirmation compensation to Mr. Lindgren, Mr. Kakish and Ms. Phelps shall be remain the same as paid on the date of filing this case.

5.3 **Preservation and Settlement of Causes of Action.**
In accordance with §1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including, without limitation, causes of action that may exist under §§542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively the "Retained Actions"). The Debtor expects that it may bring

actions to recover a pre-petition levy on its cash by Design Design, Inc. as a potential constructive fraudulent conveyance. For clarity, there may be claim objections brought as well although technically these may not be Retained Actions as defined herein.

Any proceeds of a Cause of Action will be paid out to the Class of Creditors receiving a distribution as of the date the proceeds are received. The Debtor will not retain any proceeds for its own operations.

### 5.4 Confirmation Pursuant to §1191(a) or §1191(b) of the Bankruptcy Code.

Debtor's petition for relief elected to have subchapter V of Chapter 11 to apply to its case. The Debtor intends to seek confirmation of this Plan under §1191 of the Bankruptcy Code. If all voting classes accept the Plan, the Debtor will seek confirmation pursuant to §1191(a) of the Bankruptcy Code. If one or more of the voting classes do not accept the Plan, the Debtor will seek a "cram down" confirmation of the Plan pursuant to §1191(b) of the Bankruptcy Code.

### 5.5 Distribution of Plan Payments.

If the Plan is confirmed pursuant to 11 USC §1191(a) or §1191(b), the Debtor will make all payments under this Plan per the provisions of the Bankruptcy Code.

### 5.6 Default.

For the avoidance of doubt, nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy Code, including with respect to post-petition liabilities of the Debtor.

(a) **Notice of Default.** If the Debtor fails to make a payment timely due to any class of this Plan, or if the Debtor fails to timely pay its Professional Fees, the relevant creditor may send a written notice of default to the Debtor. Notices of default must be in writing and delivered by US Certified Mail Return Receipt requested to the Debtor at13708 83rd Way, Maple Grove, MN 55369 along with a copy to Walsh Law, Ronald J. Walsh, Esq., 13570 Grove Drive, Suite 172, Maple Grove, MN 55311.

(b) **Remedy.** Unless the Plan expressly provides otherwise, if the Debtor fails to cure within twenty (20) business days of such notice from a creditor, the relevant creditor shall be entitled to file an affidavit of default in support of a motion for relief from stay and or motion to dismiss, said affidavit shall attest to such default and stay relief with respect to any collateral subject to its liens or the motion to dismiss, which motion shall be granted unless the Debtor files an Objection and the Court finds that the affidavit does not adequately establish the basis for declaring a material default. All creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

5.7 **Post Petition Federal Income Tax, Payroll Tax and Tax Returns.**

The Debtor will timely file as and when due, any and all post-petition federal income and business tax returns and will timely pay any post-petition federal and business taxes.   The Debtor will make quarterly estimated tax payments, and/or payments of federal income and business taxes, the IRS may be entitled an order for dismissal of this case upon the filing of an affidavit with the court that attests to such default and also that the IRS had mailed a letter by first class mail to the Debtor and Debtor's counsel that gave notice of said default and a 30-day period to cure and that such a cure had not been performed, provided however, that the Debtor may file an objection to such affidavit in which case the motion of the IRS will granted unless the court finds that the affidavit does not adequately establish a factual basis for declaring a material default.

The Debtor agrees to set aside, reserve and deposit, as required by applicable law. the entire payroll tax amount owed with each payroll and to file proof of such tax deposits with each of the Debtor's monthly operating reports, to the extent such monthly operating reports are otherwise required.  Failure to comply with paragraph 5.7 shall constitute a default that is subject to Paragraph 5.6 herein.

## ARTICLE VI: GENERAL PROVISIONS

6.1 **Definitions.**

The definitions and rules of construction set forth in §§101and 102 of the Bankruptcy Code shall apply unless a term is otherwise defined in this Plan, and as supplemented by the following definitions:

**"Effective Date":** The effective date of this Plan is the later of the first business day following the date that is 30 days after the confirmation order has become a final order or April 1 2025.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

6.2 **Severability.**

If any term of this Plan is held by the Bankruptcy Court to be invalid or unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

6.3 **Binding Effect of this Plan.**

The provisions of this Plan will be binding upon and inure to the benefit of the Debtor, any holder of a claim or equity interest, their respective predecessors, successors, assigns, agents, officers and directors and any other entity affected by this Plan.  As to any Governmental Unit (as defined in §101(27) of the Code) nothing in the Plan or confirmation order shall limit or expand the scope of discharge, release or injunction to which the Debtor or reorganized Debtor is entitled to under the Bankruptcy Code, if any  The discharge, release and injunction provisions contained in the Plan or confirmation order are not intended

and will not be construed to bar in any Governmental Unit from, subsequent to the confirmation order, pursuing any police or regulatory action. Notwithstanding anything contained in the Plan or confirmation order shall discharge, release, impair, or otherwise preclude : (1) any liability to any Governmental Unit that is not a "claim" withing the meaning of §101(5) of the Code; (2) any claim of a Governmental Unit arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of any Governmental Unit against the Debtor or reorganized debtor under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Confirmation Date. Nor will anything in this Plan or confirmation order (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence, except where the Bankruptcy Court has maintained jurisdiction. Moreover, nothing in the Plan or confirmation order will release or exculpate any non-debtor, including any released parties or exculpated parties from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or criminal laws against any released parties or exculpated parties, nor shall anything in the Plan or confirmation order enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability whatsoever; provided however, that the foregoing sentence will not limit the scope of discharge, if any, granted to the Debtor under §§524 and 1141 of the Bankruptcy Code. Nothing contained in the Plan or confirmation order will be deemed to determine the tax liability of any person or entity other than the Debtor for tax claims treated within the Plan, nor will the Plan or confirmation order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan (except as explicitly stated within the Plan).

6.4 **Captions.**
    Article and Section captions used in this Plan are for convenience only and will not affect the construction of this Plan.

6.5 **Controlling Effect.**
    Unless a bankruptcy statute or procedure is specified as controlling by federal law, the state and federal laws of Minnesota shall govern this Plan and any agreements executed in connection with this Plan.

6.6 **Court to Retain Jurisdiction.**
    After the effective date, this Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to the Debtor's bankruptcy case or this Plan pursuant to, and for purposes of, §105(a) and §1142 of the Bankruptcy Code among other things, to determine any and all disputes relating to administrative expenses, claims, and equity interests, including the allowance and amount thereof; enforce or interpret the provisions of the Plan or the order confirming the Plan; determine any and all disputes; consider and allow any and all applications

for compensation for professional fees; determine any and all applications, motions, adversary proceedings and contested or litigated matters pending on the Effective Date and arising in or related to the Plan; remedy any defect or omission or reconcile any inconsistency in this Plan; issue such orders, consistent with §1142 f the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan; hear any other matter not inconsistent with the Bankruptcy Code; and enter a final decree closing the Debtor's bankruptcy case. Nothing in the Plan or confirmation order will be deemed to expressly expand or diminish the jurisdiction of the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment under the Bankruptcy Code and 28 USC §§157 and 1334.

6.7 **Reporting Obligations.**
The Debtor will continue to file periodic disbursement reports when due until the case is closed, dismissed or converted. The Debtor may request administrative closure of the case.

## ARTICLE VII: DISCHARGE

7.1 **Discharge Under Consensual Plan.**
If the Debtor's Plan is confirmed under §1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in §1141(d)(6) of the Bankruptcy Code. The Debtor will file a plan of substantial consummation within sixty (60) days of plan confirmation if confirmed under §1191(a).

7.2 **Discharge Under Non-Consensual Plan.**
If the Debtor's Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first six (6) years of this Plan; or as otherwise provided in §1192 of the Bankruptcy Code; or (ii) excepted from discharge under §523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Walsh Law

Dated: December 31, 2024

Ronald J. Walsh. Esq., Lic. No. 187847
13570 Grove Drive, Suite 172
Maple Grove, MN 55311
953-746-7872
ron@walshlawmn.com
Attorney for Debtor

MPGF, Inc.

Dated: December 31, 2024

/s/ *Joshua Lindgren*
By Joshua Lindgren
Its President

**EXHIBIT A**

ESTIMATED LIQUIDATION VALUE

ASSETS

|  |  |  |
|---|---|---:|
| | CASH ON HAND | $1,000.00 |
| | CASH IN BANK | $1,200.00 |
| | ACCOUNTS RECEIVABLE | $37,000.00 |
| | PERISHABLE /HARD INVENTORY | $15,000.00 |
| | OFFICE FURNITURE & EQUIPMENT | $600.00 |
| | COOLER | $10,000.00 |
| TOTAL ASSETS | | $64,800.00 |
| LESS SECURED CLAIMS | HPJ, LLC | $84,253.51 |
| LIQUIDATION PROCEEDS | $0.00 to unsecured claims in Chapter 7 | **-$19,453.51** |
| PROPOSED DISTRIBUTION | 100% to allowed claims under Plan | $180,000.00 |

11:49 AM
11/25/24
Accrual Basis

**MPGF, INC**
**Profit & Loss**
January through October 2024

| | Jan 24 | Feb 24 | Mar 24 | Apr 24 | May 24 | Jun 24 | Jul 24 |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| 4000 · Product Sales | 64,604.20 | 97,750.00 | 46,276.12 | 68,970.68 | 131,805.76 | 69,922.50 | 64,717.06 |
| 4100 · Fee Income | 7,779.00 | 11,964.61 | 7,293.02 | 8,148.13 | 15,704.58 | 8,253.00 | 9,636.00 |
| 4200 · Florist-to-Florist Sales | 1,747.95 | 1,086.12 | 776.37 | 1,447.59 | 2,620.96 | 802.36 | 914.31 |
| 4400 · Event Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 | 100.00 |
| 4600 · Discounts & Allowances | -8,953.48 | -2,010.85 | -680.64 | -862.80 | -7,383.17 | -1,780.34 | -2,739.57 |
| 4990 · Over/Short | 252.24 | 1,311.35 | -69.73 | -1,231.42 | -1,633.90 | 0.00 | 2,986.84 |
| **Total Income** | 65,429.91 | 110,101.23 | 53,595.14 | 76,472.18 | 141,114.23 | 77,297.52 | 75,614.64 |
| **Cost of Goods Sold** | | | | | | | |
| 5100 · Delivery Service | 1,908.44 | 3,372.83 | 1,898.13 | 2,932.47 | 2,665.27 | 2,889.42 | 189.75 |
| 5200 · Delivery & Freight | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.12 | 206.86 |
| 5300 · Florist-to-Florist | 184.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5400 · Landscaping | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5500 · Product Purchases | 28,877.31 | 48,056.41 | 9,862.53 | 32,241.36 | 78,589.39 | 36,548.99 | 26,646.70 |
| 5600 · Purchase Discounts | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5700 · Shop Supplies | 456.19 | 137.92 | 0.00 | 449.03 | 0.00 | 1,046.05 | 518.79 |
| 5800 · Subcontractors (All 1099s - non-wag) | 20,189.54 | 19,809.62 | 14,793.70 | 18,738.66 | 32,629.03 | 12,254.39 | 14,047.29 |
| **Total COGS** | 51,616.47 | 71,376.78 | 26,554.36 | 54,361.52 | 113,883.69 | 52,838.97 | 41,609.39 |
| **Gross Profit** | 13,813.44 | 38,724.45 | 27,040.78 | 22,110.66 | 27,230.54 | 24,458.55 | 34,005.25 |
| **Expense** | | | | | | | |
| 6000 · Advertising and Promotion | 250.00 | 500.00 | 50.00 | 500.00 | 250.00 | 496.00 | 0.00 |
| 6010 · Bank Charges | | | | | | | |
| 6011 · Merchant Account Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -30.50 | 0.00 |
| 6010 · Bank Charges - Other | 41.00 | 661.00 | 651.00 | 447.00 | 207.00 | 499.88 | 71.64 |
| Total 6010 · Bank Charges | 41.00 | 661.00 | 651.00 | 447.00 | 207.00 | 469.38 | 71.64 |
| 6020 · Computers & Internet | 90.00 | 90.00 | 90.70 | 90.30 | 90.75 | 594.54 | 60.00 |
| 6030 · Charitable Donations | 1,670.46 | 0.00 | 79.00 | 1,551.00 | 0.00 | 0.00 | 583.34 |
| 6050 · Dues & Subscriptions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 648.90 | 0.00 |
| 6060 · Employee Wages | 12,465.77 | 15,628.94 | 8,970.52 | 5,510.45 | 5,659.22 | 1,567.74 | 3,780.86 |

**EXHIBIT B**

**MPGF, INC**
**Profit & Loss**
January through October 2024

11:49 AM
11/25/24
Accrual Basis

| | Jan 24 | Feb 24 | Mar 24 | Apr 24 | May 24 | Jun 24 | Jul 24 |
|---|---|---|---|---|---|---|---|
| 6070 · Event Expenses | | | | | | | |
| 6071 · Equipment Rental | | | | | | | |
| 6073 · Linens | 0.00 | 0.00 | 0.00 | 0.00 | 327.78 | 1,038.01 | 1,594.89 |
| Total 6071 · Equipment Rental | 0.00 | 0.00 | 0.00 | 0.00 | 327.78 | 1,038.01 | 1,594.89 |
| 6075 · Merchandise | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,111.83 |
| 6077 · Setup | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6079 · Warehouse Rent | 3,323.43 | 2,818.23 | 2,844.34 | 2,789.57 | 2,689.85 | 71.45 | 5,381.01 |
| Total 6070 · Event Expenses | 3,323.43 | 2,818.23 | 2,844.34 | 2,789.57 | 3,017.63 | 1,109.46 | 8,087.73 |
| 6080 · Insurance Expense | 309.72 | 396.04 | 2,860.09 | 2,316.67 | 1,485.60 | 2,166.63 | 461.28 |
| 6100 · Meals | 58.64 | 0.00 | 0.00 | 49.11 | 169.01 | 0.00 | 0.00 |
| 6110 · Mileage | 566.88 | 188.36 | 255.83 | 191.35 | 621.25 | 214.54 | 427.33 |
| 6120 · Office Supplies | 0.00 | 524.20 | 0.00 | 0.00 | 0.00 | 0.00 | 306.63 |
| 6130 · Payroll Expenses | | | | | | | |
| 6132 · FICA Expense | 0.00 | 0.00 | 0.00 | 0.00 | 944.70 | 600.94 | 0.00 |
| 6130 · Payroll Expenses - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,094.92 |
| Total 6130 · Payroll Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 944.70 | 600.94 | 2,094.92 |
| 6140 · Postage & Delivery | 19.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6150 · Professional Fees | | | | | | | |
| 6151 · Accounting | 14.25 | 0.00 | 0.00 | 0.00 | 0.00 | 200.80 | 100.40 |
| 6153 · HR | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 500.23 | 0.00 |
| 6155 · Legal Fees | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6157 · Payroll Processing Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6159 · POS System | 6,855.80 | 0.00 | -2,048.78 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6150 · Professional Fees | 6,870.05 | 2,000.00 | -2,048.78 | 0.00 | 0.00 | 701.03 | 100.40 |
| 6160 · Rent Expense | | | | | | | |
| 6165 · Rice Lake Plaza | 12,000.00 | 4,500.00 | 0.00 | 6,500.00 | -1,000.00 | 7,966.87 | 0.00 |
| Total 6160 · Rent Expense | 12,000.00 | 4,500.00 | 0.00 | 6,500.00 | -1,000.00 | 7,966.87 | 0.00 |
| 6170 · Repair & Maintenance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6190 · Telephone Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6200 · Travel Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

11:49 AM
11/25/24
Accrual Basis

## MPGF, INC
## Profit & Loss
### January through October 2024

| | Jan 24 | Feb 24 | Mar 24 | Apr 24 | May 24 | Jun 24 | Jul 24 |
|---|---|---|---|---|---|---|---|
| 6209 · Transportation | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total 6200 · Travel Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6220 · Utilities | 767.32 | 827.85 | 25.89 | 870.57 | 538.17 | 427.71 | 1,128.96 |
| Total Expense | 38,432.77 | 28,134.62 | 13,778.59 | 20,816.02 | 11,983.33 | 16,963.74 | 17,103.09 |
| Net Ordinary Income | -24,619.33 | 10,589.83 | 13,262.19 | 1,294.64 | 15,247.21 | 7,494.81 | 16,902.16 |
| Net Income | -24,619.33 | 10,589.83 | 13,262.19 | 1,294.64 | 15,247.21 | 7,494.81 | 16,902.16 |

Cash Collateral Payment

Projected Net Revenue

11:49 AM
11/25/24
Accrual Basis

# MPGF, INC
## Profit & Loss
### January through October 2024

| | Aug 24 | Sep 24 | Oct 24 | TOTAL | 10 Month Average | Adjusted Expenses - 10% ceiling |
|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | |
| **Income** | | | | | | |
| 4000 · Product Sales | 77,870.70 | 64,883.78 | 79,771.52 | 766,572.32 | $76,657.23 | |
| 4100 · Fee Income | 10,212.00 | 6,679.01 | 11,866.52 | 97,535.87 | $9,753.59 | |
| 4200 · Florist-to-Florist Sales | 1,850.89 | 730.02 | 1,249.98 | 13,226.55 | $1,322.66 | |
| 4400 · Event Income | 150.00 | 200.00 | 0.00 | 550.00 | $55.00 | |
| 4600 · Discounts & Allowances | -2,651.49 | -731.54 | -897.81 | -28,691.69 | -$2,869.17 | |
| 4990 · Over/Short | -213.60 | -2,411.03 | -3,311.37 | -4,320.62 | -$432.06 | |
| **Total Income** | 87,218.50 | 69,350.24 | 88,678.84 | 844,872.43 | $84,487.24 | |
| **Cost of Goods Sold** | | | | | | |
| 5100 · Delivery Service | 2,298.69 | 2,436.39 | 4,296.41 | 24,887.80 | $2,488.78 | $2,737.66 |
| 5200 · Delivery & Freight | 194.58 | 178.44 | 386.37 | 1,066.37 | $106.64 | $117.30 |
| 5300 · Florist-to-Florist | 0.00 | 64.99 | 286.97 | 536.95 | $53.70 | $59.06 |
| 5400 · Landscaping | 270.79 | 0.00 | 0.00 | 270.79 | $27.08 | $29.79 |
| 5500 · Product Purchases | 40,217.16 | 37,596.34 | 29,746.67 | 368,382.86 | $36,838.29 | $40,522.11 |
| 5600 · Purchase Discounts | 31.15 | 0.00 | -20.99 | 10.16 | $1.02 | $1.12 |
| 5700 · Shop Supplies | 2,394.64 | 1,575.84 | 2,533.04 | 9,111.50 | $911.15 | $1,002.27 |
| 5800 · Subcontractors (All 1099s - non-wag | 18,033.40 | 12,010.57 | 22,451.51 | 184,957.71 | $18,495.77 | $20,345.35 |
| **Total COGS** | 63,440.41 | 53,862.57 | 59,679.98 | 589,224.14 | $58,922.41 | $64,814.66 |
| **Gross Profit** | 23,778.09 | 15,487.67 | 28,998.86 | 255,648.29 | $25,564.83 | |
| **Expense** | | | | | | |
| 6000 · Advertising and Promotion | 52.14 | 50.00 | 2,010.42 | 4,158.56 | $415.86 | $457.44 |
| 6010 · Bank Charges | | | | | | |
| 6011 · Merchant Account Fees | 0.00 | 0.00 | 0.00 | -30.50 | -$3.05 | -$3.36 |
| 6010 · Bank Charges - Other | 0.00 | 91.00 | 0.00 | 2,669.52 | $266.95 | $293.65 |
| Total 6010 · Bank Charges | 0.00 | 91.00 | 0.00 | 2,639.02 | $263.90 | |
| 6020 · Computers & Internet | 65.00 | 2,787.59 | 728.82 | 4,687.70 | $468.77 | $515.65 |
| 6030 · Charitable Donations | 686.20 | 0.00 | 120.00 | 4,690.00 | $469.00 | $515.90 |
| 6050 · Dues & Subscriptions | 0.00 | 149.00 | 0.00 | 797.90 | $79.79 | $87.77 |
| 6060 · Employee Wages | 7,036.29 | 8,929.08 | 15,080.48 | 84,629.35 | $8,462.94 | $9,309.23 |

11:49 AM
11/25/24
Accrual Basis

## MPGF, INC
## Profit & Loss
### January through October 2024

| | Aug 24 | Sep 24 | Oct 24 | TOTAL | 10 Month Average | Adjusted Expenses - 10% ceiling |
|---|---|---|---|---|---|---|
| 6070 · Event Expenses | | | | | $0.00 | |
| 6071 · Equipment Rental | | | | | $0.00 | |
| 6073 · Linens | 0.00 | 0.00 | 665.60 | 3,626.28 | $362.63 | $398.89 |
| Total 6071 · Equipment Rental | 0.00 | 0.00 | 665.60 | 3,626.28 | $362.63 | $398.89 |
| 6075 · Merchandise | 0.00 | 213.73 | 0.00 | 1,325.56 | $132.56 | $145.81 |
| 6077 · Setup | 0.00 | 0.00 | 0.00 | 0.00 | | |
| 6079 · Warehouse Rent | 2,716.11 | 2,700.19 | 25.89 | 25,360.07 | $2,536.01 | $2,789.61 |
| Total 6070 · Event Expenses | 2,716.11 | 2,913.92 | 691.49 | 30,311.91 | $3,031.19 | |
| 6080 · Insurance Expense | 2,870.02 | 1,889.17 | 1,848.53 | 16,603.75 | $1,660.38 | $1,826.41 |
| 6100 · Meals | 26.86 | 639.36 | 53.18 | 996.16 | $99.62 | $109.58 |
| 6110 · Mileage | 60.00 | 294.95 | 911.04 | 3,731.53 | $373.15 | $410.47 |
| 6120 · Office Supplies | 43.57 | 538.24 | 191.06 | 1,603.70 | $160.37 | $176.41 |
| 6130 · Payroll Expenses | | | | | $0.00 | |
| 6132 · FICA Expense | 0.00 | 2,782.17 | 0.00 | 4,327.81 | $432.78 | $476.06 |
| 6130 · Payroll Expenses - Other | -624.81 | 0.00 | -19.30 | 1,450.81 | $145.08 | $159.59 |
| Total 6130 · Payroll Expenses | -624.81 | 2,782.17 | -19.30 | 5,778.62 | $577.86 | |
| 6140 · Postage & Delivery | 0.00 | 43.25 | 90.41 | 153.16 | $15.32 | $16.85 |
| 6150 · Professional Fees | | | | | $0.00 | |
| 6151 · Accounting | 125.95 | 0.00 | 0.00 | 441.40 | $44.14 | $48.55 |
| 6153 · HR | 0.00 | 0.00 | 0.00 | 500.23 | $50.02 | $55.03 |
| 6155 · Legal Fees | 0.00 | 0.00 | 0.00 | 2,000.00 | $200.00 | $220.00 |
| 6157 · Payroll Processing Fee | 258.40 | 105.40 | 0.00 | 363.80 | $36.38 | $40.02 |
| 6159 · POS System | 0.00 | 0.00 | 0.00 | 4,807.02 | $480.70 | $528.77 |
| Total 6150 · Professional Fees | 384.35 | 105.40 | 0.00 | 8,112.45 | $811.25 | |
| 6160 · Rent Expense | | | | | $0.00 | |
| 6165 · Rice Lake Plaza | 7,966.87 | 7,966.87 | 7,966.87 | 53,867.48 | $5,386.75 | $8,391.96 |
| Total 6160 · Rent Expense | 7,966.87 | 7,966.87 | 7,966.87 | 53,867.48 | $5,386.75 | |
| 6170 · Repair & Maintenance | 0.00 | 92.00 | 0.00 | 92.00 | $9.20 | $10.12 |
| 6190 · Telephone Expense | 767.36 | 0.00 | 1,650.50 | 2,417.86 | $241.79 | $265.96 |
| 6200 · Travel Expense | | | | | | |

11:49 AM
11/25/24
Accrual Basis

# MPGF, INC
## Profit & Loss
### January through October 2024

| | Aug 24 | Sep 24 | Oct 24 | TOTAL | 10 Month Average | Adjusted Expenses - 10% ceiling |
|---|---|---|---|---|---|---|
| 6209 · Transportation | 78.06 | 219.02 | 55.19 | 352.27 | $35.23 | $38.75 |
| Total 6200 · Travel Expense | 78.06 | 219.02 | 55.19 | 352.27 | $35.23 | |
| 6220 · Utilities | 674.31 | 1,953.74 | 899.47 | 8,113.99 | $811.40 | $892.54 |
| Total Expense | 22,802.33 | 31,444.76 | 32,278.16 | 233,737.41 | $23,373.74 | |
| Net Ordinary Income | 975.76 | -15,957.09 | -3,279.30 | 21,910.88 | $2,191.09 | |
| Net Income | 975.76 | -15,957.09 | -3,279.30 | 21,910.88 | $2,191.09 | |

Cash Collateral Payment

Projected Net Revenue

11:49 AM
11/25/24
Accrual Basis

## MPGF, INC
## Profit & Loss
### January through October 2024
90 day projection
and Allowed
Expenditures

| | | |
|---|---|---|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| 4000 · Product Sales | | |
| 4100 · Fee Income | | |
| 4200 · Florist-to-Florist Sales | | |
| 4400 · Event Income | | |
| 4600 · Discounts & Allowances | | |
| 4990 · Over/Short | | |
| **Total Income** | $92,935.97 | Projected Holiday Revenue through V-Day |
| **Cost of Goods Sold** | | |
| 5100 · Delivery Service | $2,737.66 | |
| 5200 · Delivery & Freight | $117.30 | |
| 5300 · Florist-to-Florist | $59.06 | |
| 5400 · Landscaping | $29.79 | |
| 5500 · Product Purchases | $40,522.11 | Generous but not likely.  Sell current inventory |
| 5600 · Purchase Discounts | $1.12 | |
| 5700 · Shop Supplies | $1,002.27 | |
| 5800 · Subcontractors (All 1099s · non-wag | $20,345.35 | |
| **Total COGS** | $64,814.66 | |
| **Gross Profit** | $28,121.31 | |
| **Expense** | | |
| 6000 · Advertising and Promotion | $457.44 | |
| 6010 · Bank Charges | | |
| 6011 · Merchant Account Fees | $25.00 | Proposed reasonable allowance |
| 6010 · Bank Charges - Other | $293.65 | |
| Total 6010 · Bank Charges | | |
| 6020 · Computers & Internet | $515.65 | |
| 6030 · Charitable Donations | $515.90 | |
| 6050 · Dues & Subscriptions | $87.77 | |
| 6060 · Employee Wages | $9,309.23 | |

11:49 AM
11/25/24
Accrual Basis

**MPGF, INC**
**Profit & Loss**
January through October 2024
90 day projection
and Allowed
Expenditures

| | |
|---|---|
| **6070 · Event Expenses** | |
| 6071 · Equipment Rental | |
| 6073 · Linens | $398.89 |
| Total 6071 · Equipment Rental | |
| 6075 · Merchandise | $145.81 |
| 6077 · Setup | |
| 6079 · Warehouse Rent | $1,000.00 Relocate to smaller short term storage |
| Total 6070 · Event Expenses | |
| 6080 · Insurance Expense | $1,826.41 |
| 6100 · Meals | $109.58 |
| 6110 · Mileage | $410.47 |
| 6120 · Office Supplies | $176.41 |
| 6130 · Payroll Expenses | |
| 6132 · FICA Expense | $476.06 |
| 6130 · Payroll Expenses - Other | $159.59 |
| Total 6130 · Payroll Expenses | |
| 6140 · Postage & Delivery | $16.85 |
| 6150 · Professional Fees | |
| 6151 · Accounting | $48.55 |
| 6153 · HR | $55.03 |
| 6155 · Legal Fees | |
| 6157 · Payroll Processing Fee | $40.02 |
| 6159 · POS System | $528.77 |
| Total 6150 · Professional Fees | |
| 6160 · Rent Expense | |
| 6165 · Rice Lake Plaza | $8,391.96 Adjust to actual rent |
| Total 6160 · Rent Expense | |
| 6170 · Repair & Maintenance | $10.12 |
| 6190 · Telephone Expense | $265.96 |
| 6200 · Travel Expense | |

11:49 AM
11/25/24
Accrual Basis

# MPGF, INC
## Profit & Loss
### January through October 2024

| | 90 day projection and Allowed Expenditures |
|---|---|
| 6209 · Transportation | $38.75 |
| Total 6200 · Travel Expense | |
| 6220 · Utilities | $892.54 |
| Total Expense | |
| Net Ordinary Income | |
| Net Income | |
| Cash Collateral Payment | $1,500.00  Per Stipulation |
| | $27,696.41 |
| Projected Net Revenue | $424.89  Projected, subject to additional cuts and generous expense allowances |